UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THEOS MEDICAL SYSTEMS, INC., <br> Plaintiff, <br> v. <br> NYTONE MEDICAL PRODUCTS, INC., <br> Defendant. | Case No. 19-cv-01092-VKD <br><br> **ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE** <br><br> **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 18 |

Plaintiff Theos Medical Systems, Inc. ("Theos") moves for default judgment against defendant Nytone Medical Products, Inc. ("Nytone") on Theos' claims for false advertising and unfair competition. Dkt. No. 18. In the alternative, Theos asks the Court to transfer the action to the District of Utah. Dkt. No. 22.

Theos has consented to proceed before a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. However, Nytone has not appeared and is in default. Dkt. No. 12. Because not all parties have consented to magistrate judge jurisdiction, this case must be reassigned. Accordingly, this Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and recommendation that Theos's motion for default judgment be denied for lack of personal jurisdiction,[1] but that Theos's alternate request for transfer to the U.S. District Court for the District of Utah be granted.

---

[1] The Court does not reach Theos's arguments regarding venue.

**REPORT AND RECOMMENDATION**

**I.  BACKGROUND**

This is an action for alleged false advertising and unfair competition. Plaintiff Theos says it is a California corporation with its principal place of business in Santa Clara, California. Dkt. No. 1. Theos alleges that defendant Nytone is a Utah corporation with its principal place of business in Provo, Utah. *Id*. According to the complaint, Theos and Nytone are competitors in the market for bedwetting alarms. Theos describes this as "a niche market with a limited number of competitors." Dkt. No. 18-1 ¶ 3. Additionally, Theos claims that bedwetting alarms, as a rule, are sold, not in brick-and-mortar stores, but on the internet through Amazon, eBay, and manufacturers' own websites. *Id*. ¶ 4.

Theos alleges that Nytone made a number of false statements in advertising Nytone's alarm products, including that Nytone's devices are "FDA Approved" and "Top Doctor Rated," and that Nytone has "500,000+ success stories." Dkt. No. 1 ¶¶ 8-9. Additionally, Theos claims that, at times, Nytone has used as an Amazon search term the word "Chummie," a Theos brand name for which Theos owns a registered trademark. *Id*. ¶ 10;[2] *see also* Dkt. No. 18-1 ¶ 14; Dkt. No. 22-1 ¶ 9. Theos claims that when Nytone launched its alleged false advertising campaign in September 2016, Theos suffered a significant decline in sales. Dkt. No. 18-1 ¶ 9. According to Theos's moving papers, "Nytone shut its website down in approximately December 2018," approximately two months before the present lawsuit was filed. *Id*. ¶ 12. Nonetheless, Theos claims that during the relevant period, it lost over $3 million. *Id*. ¶ 19. Asserting that the bedwetting alarm market is "steady" and "relatively constant," Theos maintains that the only explanation for its losses is Nytone's alleged false advertising. *Id*. ¶¶ 3, 9.

Theos filed the present lawsuit on February 27, 2019, asserting claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as well as California Business and Professions Code § 17200 and § 17500. Dkt. No. 1. Theos seeks injunctive relief, no less than $1 million in monetary damages (plus trebled and punitive damages), attorneys' fees and costs. *Id*.

---

[2] The complaint contains two paragraphs numbered "10." The Court refers here to the first paragraph 10.

|   |   |
|---|---|
| United States District Court | |
| Northern District of California | |

1    Although the record indicates that Nytone was served with process (Dkt. No. 7), Nytone

2    failed to respond to the complaint or otherwise appear in this matter.  At Theos's request, the

3    Clerk of the Court entered Nytone's default on June 4, 2019.  Dkt. No. 12.

4    Theos now moves for default judgment.  Dkt. No. 18.  Because Theos did not

5    meaningfully address personal jurisdiction or venue in its motion or in its complaint, the Court

6    issued an interim order directing Theos to submit supplemental briefing clarifying the basis for the

7    Court's exercise of personal jurisdiction over Nytone and relatedly, the propriety of venue in this

8    district.  Dkt. No. 20.  In its supplemental briefing, Theos contends that Nytone's activities, which

9    occurred primarily over the internet, as well as its purported volume of business in California,

10   provide sufficient bases for venue and the exercise of specific personal jurisdiction.  Dkt. No. 22.

11   Theos argues in the alternative that, instead of dismissing this matter, the Court should transfer

12   this action to the United States District Court for the District of Utah.  *Id*.

13   Nytone has not opposed or otherwise responded to Theos's motion for default judgment,[3]

14   and briefing is closed.  Civ. L.R. 7-3(a).  This Court held a hearing on the matter on December 10,

15   2019.  Theos appeared; Nytone did not.

## II.   LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a).  After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2);[4] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding

---

[3] Although there is no indication that Theos served its moving or supplemental papers on Nytone, a party in default is not entitled to notice under Fed. R. Civ. P. 55 unless it has appeared, formally or informally, and demonstrated a clear intent to defend the suit.  Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."); *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir.1993) ("While it is true that the failure to provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for the failure to do so, notice is only required where the party has made an appearance.") (quotations and citations omitted); *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 368 (9th Cir.1977) ("No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the action.").  As discussed above, the record reflects that Nytone has not appeared, formally or otherwise, in this matter.

[4] "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2).  There are no such issues presented here.

3

whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

### A. Subject Matter Jurisdiction and Service of Process

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, federal question jurisdiction is based on Theos's Lanham Act claim for relief. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Theos's state law claims pursuant to 28 U.S.C. § 1367.

Additionally, "[a] federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Rain Design, Inc. v. Spinido, Inc.*, No. 17-cv-03681-JSC, 2018 WL 7269019, at *2 (N.D. Cal. Nov. 15, 2018) (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)). Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic corporation may be served:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B). Alternatively, Rule 4 provides that service on a corporation may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ.

P. 4(e)(1), (h)(1)(A).

California Code of Civil Procedure section 416.10 provides that a corporation may be served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process" or "[t]o the president, chief executive officer, or other head of a corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or person authorized by the corporation to receive service of process." Cal. C.C.P. § 416.10(a), (b).

Theos filed a proof of service indicating that the process server personally served Cali Smith, identified as a person "designated by law to accept service of process on behalf of [Nytone]." Dkt. No. 7 at 3. The Court finds that Nytone properly was served with process.

### B. Specific Personal Jurisdiction[5]

Theos acknowledges that it does not have enough facts to establish general jurisdiction. Dkt. No. 22 at 4. The only question is whether the Court may exercise specific personal jurisdiction over Nytone.

Because no federal statute authorizes personal jurisdiction in this matter, California law applies. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Id.* "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotations and citation omitted).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident

---

[5] As noted above, Theos acknowledges that Nytone shut down its website about two months before the present lawsuit was filed (Dkt. No. 18-1 ¶ 12). Theos nevertheless contends that the focus of the Court's jurisdictional inquiry should be on Nytone's contacts with California at the time Theos's claims arose, and not at the time the present lawsuit was filed. Theos does cite some support for that proposition. *See Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. App'x 502 (9th Cir. 2018). Even assuming that Theos is correct with respect to the time when Nytone's contacts should be measured, for the reasons discussed above, this Court finds that Theos has not established specific jurisdiction over Nytone.

5

defendant 'focuses on the relationship among the defendant, the forum, and the litigation,'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)), and "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," *id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (same). Personal jurisdiction cannot be established based on conduct of the plaintiff or of third parties within the forum state. *Walden*, 571 U.S. at 284. Nor can the plaintiff be the only link between the defendant and the forum. *Id*. at 285. "These principles apply to cases involving intentional torts." *Axiom Foods, Inc.*, 874 F.3d at 1068 (citing *Walden*, 571 U.S. at 286)).

Courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo, Inc.*, 647 F.3d at 1228. If the plaintiff does so, then the burden shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp.*, 471 U.S. at 476-78). Where jurisdictional issues are decided "on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand [dismissal]." *Id*. at 1223. Although courts may not assume the truth of allegations in a pleading which are contradicted by affidavit, factual disputes are resolved in the plaintiff's favor. *Id*.

### 1. Purposeful Direction

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." *Id*. at 1228. For cases involving tortious conduct outside the forum, courts employ a purposeful direction analysis, applying an "effects" test. *Id*.; *see also Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597, 606 (9th Cir. 2018) (clarifying that the

6

"effects" test "makes more sense when dealing with out-of-forum tortfeasors."). The "effects" test is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984) and "requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc.*, 647 F.3d at 1228 (internal quotations and citation omitted).

### a. Intentional Act

"An intentional act refers to 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D. Cal. 2012) (quoting *Schwarzenegger,* 374 F.3d at 806). Theos claims that Nytone deliberately used Theos's trademarked name "Chummie" as a key search term to direct Amazon users to Nytone's products, and also made false statements in advertising Nytone's products. *See, e.g.,* Dkt. Nos. 1, 18-1, 22-1. These alleged acts satisfy the intentional act requirement.

### b. Express Aiming

This factor considers whether Nytone expressly aimed its conduct at California, the forum state. The Ninth Circuit has construed *Calder* "to require 'something more' than mere foreseeability" of harm in the forum to justify personal jurisdiction over Nytone in California. *Schwarzenegger*, 374 F.3d at 805. "The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Id*. at 806.

When conduct occurs through a website, the "maintenance of a passive website alone cannot satisfy the express aiming prong." *Mavrix Photo, Inc.*, 647 F.3d at 1229 (internal quotations and citation omitted). However, "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Id*. (internal quotations and citation omitted). "In determining whether a nonresident defendant has done 'something more,' [courts] have considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant individually targeted a plaintiff known to be a forum resident." *Id*. (internal quotations and citations omitted).

7

The Ninth Circuit previously has held that "individualized targeting" satisfies the express aiming requirement. *Axiom Foods, Inc.*, 874 F.3d at 1069. "A theory of individualized targeting alleges that a defendant engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* (internal quotations and citation omitted).

However, in *Walden*, the U.S. Supreme Court noted that "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290. Thus, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. The Supreme Court expressly noted that *Walden* "d[id] not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." *Id*. at 290 n.9.

In *Axiom Foods*, the Ninth Circuit applied *Walden* to a case concerning the email distribution of a newsletter, and held that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." 874 F.3d at 1070. At issue in *Axiom Foods* was whether defendants' email distribution, including to some recipients in the forum state of California, was, by itself, sufficient to confer personal jurisdiction. The defendant that emailed the newsletter did not conduct any business in the United States, and the emails in question were sent to 343 recipients, 55 of whom had companies in California, and ten of whom were physically located in California. *Id*. at 1070. Noting a lack of evidence concerning the residence of the 55 email recipients with California companies, the Ninth Circuit concluded that the act of sending a single newsletter to those 55 recipients was "too attenuated" and "isolated" to establish jurisdiction. *Id*. As for the ten recipients who actually were located in California, the Ninth Circuit noted, "It can hardly be said that California was the focal point both of the newsletter and of the harm suffered." *Id*. at 1071 (internal quotations and alterations omitted).

At least one court in this district has observed that while "*Axiom Foods* did not explicitly

8

answer how *Walden* applies to cases where all of the alleged activity occurs online," the "decision does suggest that minimal online activity, when unaccompanied by any connections to the forum state in the physical world, are not enough to confer personal jurisdiction." *Republic of Kazakhstan v. Ketebaev*, No. 17-cv-00246-LHK, 2017 WL 6539897, at *6 (N.D. Cal. Dec. 21, 2017).

It is against this legal backdrop that this Court now considers whether Theos satisfies the express aiming requirement. As alleged in its complaint, Theos contends that Nytone advertises its products over the internet and that Nytone's alleged false "advertising is disseminated to the world, including the State of California and the County of Santa Clara." Dkt. No. 1 ¶ 6. The complaint further alleges that Nytone advertised on internet sites and search engines such as Amazon.com, Bing, Google, YouTube and Facebook. *See id*. ¶¶ 8.f-8.h. In its supplemental briefing, Theos does not appear to rely on these allegations to establish personal jurisdiction. And, indeed, even assuming these allegations are true, they are, without more, insufficient to establish that Nytone expressly aimed its conduct at California. *See, e.g., Matus v. Premium Nutraceuticals, LLC*, 715 Fed. Appx. 662, 663 (9th Cir. 2018) (concluding that defendant's alleged false advertising "on its public, commercial website, for all the world to see, visit, and consider," without more, was insufficient to satisfy the express aiming element); *DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp.2d 871, 883-84 (N.D. Cal. 2012) (finding that the express aiming requirement was not met by defendant's use of California-headquartered internet companies, such as Facebook, to direct traffic to his websites).

In its supplemental briefing, Theos instead argues that the express aiming element is satisfied by Nytone's alleged interactive website and use of "Chummie," as well as Nytone's purported share of the California bedwetting alarm market. As noted above, Theos claims that Nytone used Theos's trademarked brand name "Chummie" as a key word term to divert Amazon customers to Nytone's products. Dkt. No. 1 ¶ 10;[6] Dkt. No. 22-1 ¶ 9. In Theos's briefing on the present motion for default judgment, Mr. Saket Bhatia, Theos's Chief Executive Officer, states

---

[6] The complaint contains two paragraphs numbered "10." This Court refers here to the first paragraph 10.

9

that based on his experience and research, the total market for bedwetting alarms is $20 million per year, and that California represents approximately 25% of both the total market and Theos's sales. Dkt. No. 22-1 ¶ 4.[7] Mr. Bhatia further avers that the bedwetting alarm market is "homogenous and steady," and that it therefore is likely that 25% of Nytone's sales are made to California customers. *Id.*

At oral argument, Theos acknowledged that its assertions that Nytone expressly targeted California and that 25% of Nytone's sales were made to California residents are based on inference. Indeed, Theos's sole evidence of an actual California sale by Nytone is a purchase that Mr. Bhatia says he himself made as part of his investigation of Nytone's activities. *Id*. ¶ 7. However, courts within this district have held that a plaintiff cannot manufacture personal jurisdiction in a case by making such purchases in the forum state. *See Cisco Sys., Inc. v. Link US, LLC*, No. 18-cv-07576-CRB, 2019 WL 6682838, at * (N.D. Cal. Dec. 6, 2019) ("This rule makes sense, since the personal jurisdiction analysis focuses on the defendant's, not the plaintiff's, contacts with the forum."); *Adobe Sys., Inc. v. Nwubah*, No. 18-cv-06063-LHK, 2019 WL 6611096, at *7 (N.D. Cal. Dec. 5, 2019) (stating that such "'evidentiary buys' . . . are simply the kind of 'random, fortuitous, [] attenuated contacts that depend on *Plaintiff's contacts with the forum*, not the contacts of Defendant."); *Ayla, LLC v. Alya Skin Pty. Ltd.*, No. 19-cv-00679-HSG, 2019 WL 5963149 at *4 n.1 (N.D. Cal. Nov. 13, 2019) (stating that where the plaintiff presented insufficient evidence of express aiming, the "[p]laintiff's hiring of investigators to purchase and receive the products in California does not change the outcome."); *Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.*, No. C06-3450 JF (RS), 2006 WL 2374738, at *3 n.3 (N.D. Cal. Aug. 16, 2006) ("A plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state.").

Nonetheless, relying primarily on *Mavrix*, Theos argues that express aiming is established by Nytone's operation of an interactive, commercial website, its use of Theos's brand name

---

[7] Although this Court has sealed certain financial information Theos submitted in support of its motion, all of the matters contained in this report and recommendation were discussed in Theos's publicly filed briefs and in open court.

"Chummie," and by the fact that Nylon purportedly enjoyed a significant share of the California bedwetting alarm market. In *Mavrix*, a Florida-based celebrity photo agency brought a copyright infringement suit in California against an Ohio corporation, alleging that the defendant posted plaintiff's copyrighted photos, without permission, on the defendant's commercial, interactive website. Concluding that the express aiming requirement for personal jurisdiction was satisfied, the Ninth Circuit noted that while the defendant cultivated a nationwide audience for commercial gain, it specifically exploited the California market, as evidenced by its "operat[ion] [of] a very popular website with a specific focus on the California-centered celebrity and entertainment industries." 647 F.3d at 1230. "Based on the website's subject matter, as well as the size and commercial value of the California market," the Ninth Circuit found that the defendant "anticipated, desired, and achieved a substantial California viewer base" that was "an integral component of [defendant]'s business model and its profitability." *Id*.

While there are some similarities between *Mavrix* and the present action, *Mavrix* is materially distinguishable. Accepting Theos's allegations as true, both cases concern the purported infringement of intellectual property through interactive, commercial websites that are generally accessible, including in California where the defendants enjoyed considerable success. In *Mavrix*, the Ninth Circuit found "most salient" the fact that the defendant used the plaintiff's copyrighted photos "as part of its exploitation of the California market for its own commercial gain." 647 F.3d at 1229. In the present action, by contrast, there is nothing in the record suggesting that Nytone's website directly targeted the California market, or even referenced California. And at oral argument, Theos acknowledged that it does not have any evidence of direct marketing in California. Moreover, while the nature of the California-centered celebrity and entertainment industry was a significant factor in *Mavrix*, in the present action there is no indication that the sale of bedwetting alarms is a unique California industry or that California is a unique market for such alarms. *See Sanho Corp. v. Cimo Techs., Inc.*, No. C11-2473 PJH, 2012 WL 3075094, at *5 (N.D. Cal. July 30, 2012) (concluding that the express aiming requirement was not met where plaintiff failed to show that the defendant's website specifically targeted the California market or that the sale of iPad covers is an industry unique to California).

11

Emphasizing that "Chummie" is a Theos brand name, Theos argues that Nytone must have been aware of Theos and that Theos is based in California. At oral argument, Theos argued that it would have been obvious to anyone visiting Theos's website that Theos is a California company. Further, counsel asserted that bedwetting alarms are registered with the Federal Drug Administration ("FDA") and that Nytone likely would have researched FDA records, in addition to Theos's website, to learn about Theos and its products. Theos, however, presents no evidence to support its assertions that Nytone actually did any of these things. Nor does it cite any authority that the Court properly may assume counsel's bare assertions to be true.

Moreover, "infringement of a plaintiff's intellectual property rights with knowledge that plaintiff's operations are based in the forum and that the harm will be felt there, is insufficient to establish personal jurisdiction without a further showing that the defendant otherwise expressly aimed its activities at the forum." *One True Vine, LLC v. Liquid Brands, LLC*, No. C10-04102 SBA, 2011 WL 2148933, at *4 (N.D. Cal. May 31, 2011). Courts have reached similar conclusions in cases involving online conduct. *See, e.g., Rain Design, Inc.*, 2018 WL 7269019 at *5 (finding that, although the defendants allegedly sold infringing products online "in a large-scale attempt to copy nearly every aspect of [plaintiff]'s . . . product and associated business," plaintiff failed to provide any facts demonstrating a connection between defendants and California, such as advertisements specifically targeting California residents or records showing that California residents purchased infringing products); *Ebates, Inc. v. Cashbag.co.za*, No. 18-cv-02884-EDL, 2018 WL 6816113 (N.D. Cal. Oct. 30, 2018) (concluding that the express aiming requirement was not met, despite evidence that defendants operated an interactive website bearing an allegedly infringing logo, where there was no evidence that California residents were targeted; plaintiff merely alleged on "information and belief" that Californians made purchases using defendants' services; and the complaint contained a sole allegation about one California individual who accessed defendants' website to establish an account, make a purchase and receive cash back awards); *DFSB Kollective Co. Ltd.*, 897 F. Supp. 2d at 880-84 (concluding in a copyright infringement action that although there was evidence that the defendant's websites were very popular with a segment of California's population, there was no indication that the defendant was

12

aware of a California user base or that he made any attempt to exploit it).

For the first time at oral argument, Theos cited *Amazon.com, Inc. v. Huang Tengwei*, No. C18-1399 RSM, 2019 WL 4414957 (W.D. Wash. Sept. 16, 2019) in which the district court concluded that it had personal jurisdiction over the defendant. Theos emphasizes that the case caption in *Huang Tengwei* indicates that the plaintiff, Amazon.com, Inc. ("Amazon"), is a Delaware corporation, and Theos correctly notes that there is no indication in the decision itself that Amazon presented any evidence that the defendant knew that Amazon is based in the State of Washington. However, *Huang Tengwei* provides little analysis to support its finding regarding personal jurisdiction, and expressly notes that "Amazon is one of the most recognized brands in the world." *Id*. at *1. Insofar as Theos suggests that this Court may simply assume that Nytone knew that Theos is a California corporation, *Huang Tengwei* is not persuasive.

Closer on point is a case cited by *Huang Tengwei: CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066 (9th Cir. 2011). In *CollegeSource*, the plaintiff, a California corporation, and defendant, a Pennsylvania corporation, were competitors in a small market for college transfer services. Plaintiff sued in California for copyright infringement, alleging that the defendant copied material from the plaintiff's website and posted it on its own website. In finding that the defendant was subject to specific personal jurisdiction in California, the Ninth Circuit noted that the defendant specifically targeted California students and schools, as evidenced by its use of "California" in its Google AdWords search terms. *Id*. at 1071. Additionally, before posting the alleged infringing material, the defendant made phone calls and sent emails and letters to the plaintiff seeking to purchase the copied material—indicating that the defendant was aware of the plaintiff's California place of business. *Id*. at 1072, 1078-79. As discussed above, and notwithstanding Nytone's alleged use of "Chummie" as an Amazon search term, Theos has presented no evidence that Nytone similarly targeted California. *See, e.g., Adobe Sys., Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991-JST, 2015 WL 5834135 at *5 (N.D. Cal. Oct. 7, 2015) (stating that conclusory allegations and likelihoods are insufficient to meet the express aiming requirement)

Accordingly, Theos has failed to show that Nytone expressly aimed its conduct at

13

California.

### c. Causing Harm Likely to be Suffered in the Forum State

The third element of the *Calder* effects test is satisfied if Theos shows that Nytone has caused harm that Nytone knows is likely to be suffered in the forum state. *Mavrix Photo, Inc.*, 647 F.3d at 1231. In *Mavrix*, the Ninth Circuit concluded that it was foreseeable that "a jurisdictionally significant amount of" the plaintiff's harm would be suffered in California because "[a] substantial part of the photos' value was based on the fact that a significant number of Californians would have bought publications . . . in order to see the photos" and the defendant's acts "destroyed this California-based value . . . ." *Id.* at 1231-32.

Here, Theos relies on the same arguments it made with respect to the express aiming requirement. For the reasons discussed above, Theos's claims of harm are not as compelling as in *Mavrix*, where the defendant's alleged infringement foreseeably destroyed the publication value of the subject photos in the California forum. Theos claims that Nytone caused harm in California by diverting California sales from Theos. In order for the defendant to foresee causing harm in the forum state, the alleged tort "must involve the forum state itself and not just have some effect on a party who resides there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017). As discussed above, Theos has not shown that Nytone knew that Theos was located in California or that Theos was likely to suffer harm here.

In sum, this Court finds that Theos has not established that Nytone's actions were purposefully directed at California, and thus, Theos has not met its burden to establish personal jurisdiction over Nytone. As such, this Court need not address the other elements of the specific jurisdiction test more broadly, or the *Eitel* factors governing whether default judgment is appropriate. *See Nwubah*, 2019 WL 661096 at *8.

### C. Request for Venue Transfer

Theos requests that, instead of dismissing this action, the Court transfer this case to the District of Utah. The Court has the authority to transfer venue, even where it lacks personal jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (holding that 28 U.S.C. § 1406(a) authorizes the transfer of cases, "however wrong the plaintiff may have been

14

in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."). Where personal jurisdiction is lacking, courts within this district have variously transferred actions under 28 U.S.C. § 1406(a)[8] or 28 U.S.C. § 1631.[9] *Compare Wickline v. United Micronesia Dev. Ass'n, Inc.,* No. C14-00192 SI, 2014 WL 2938713, at *9 (N.D. Cal. June 30, 2014) (transferring case pursuant to 28 U.S.C. § 1406(a)) (citing *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 & n.4 (9th Cir. 1983)) and *Castillo v. Caesars Entm't Corp.*, No. 18-cv-05781-EMC, 2018 WL 6199682, at *4 n.4 (N.D. Cal. Nov. 28, 2018) (transferring case pursuant to 28 U.S.C. § 1631) (citing *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.3d 758, 761-62 (9th Cir 1990)). Under either statute, cases generally should be transferred if a transfer serves the interest of justice. *See Goldlawr*, 369 U.S. at 466 (observing that the purpose of 28 U.S.C. § 1406(a) was to avoid "the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn."); *Amity Rubberized Pen Co. v. Market Quest Group Inc.*, 793 F.3d 991, 997-98 (9th Cir. 2015) (concluding that where appellate jurisdiction was lacking, a transfer to the Federal Circuit pursuant to 28 U.S.C. § 1631 "would be in the interest of justice"); *Castillo*, 2018 WL 6199682, at *4 n.4 (noting that "the 'interest of justice' standard applies to both § 1406 and § 1631.").

Theos argues that the District of Utah has personal jurisdiction over Nytone, as that is where Nytone was based. There being no apparent frivolousness or bad faith with respect to Theos's claims, this Court finds that a transfer to the District of Utah therefore is appropriate.

---

[8] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

[9] "Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631.

## IV. CONCLUSION

Because not all parties have consented to the undersigned's jurisdiction, IT IS ORDERED THAT this case be reassigned to a district judge. For the reasons discussed above, it is RECOMMENDED that Theos's motion for default judgment be denied and that this matter should be transferred to the United States District Court for the District of Utah.

Theos shall promptly serve Nytone with this Report and Recommendation and file a proof of service with the Court. Any party may serve and file objections to this Report and Recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. L.R. 72-3.

**IT IS SO ORDERED.**

Dated: January 31, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge